72730. PARKS et al. v. ASSOCIATES COMMERCIAL
CORPORATION.
(351 SE2d 661)

POPE, Judge.

On or about June 30, 1979 Parks and Smith purchased a 1978 GMC dump truck from Quality Trucks, Inc. in Columbus, Georgia. As evidenced by a security agreement and conditional sales contract, Parks and Smith financed $44,659.05 of the purchase price of the truck. Quality Trucks transferred its interest in the security agreement and conditional sales contract to Associates Commercial Corporation, appellee herein. Smith subsequently assigned his interest to Parks and Lynn. Following a verbal assignment from Parks, Lynn assumed sole responsibility for making monthly payments to Associates on the debt.

Lynn fell behind in his payments and in March of 1982 Associates hired Peach State Professional Recovery, Inc. to repossess the truck. The record indicates that Messrs. Anderson and Cohen of Peach State arrived at the Lynn residence early in the morning on March 14, 1982, a Sunday. Lynn testified in his deposition that Anderson and Cohen were driving a white car with a blue light on the dash and that they made certain statements and conducted themselves in such a manner that he believed they were police detectives. In his deposition, Anderson denied that the car had a blue light on the dash and that statements were made misrepresenting their status. The truck was repossessed without incident. Lynn subsequently redeemed the truck by paying $4,500, which included amounts paid to Peach State by Associates for their services in repossessing the truck.

In the months following the redemption, Lynn again became delinquent in his payments to Associates. Lynn voluntarily surrendered the truck to Mike Sumrall at Quality Trucks on or about July 15, 1982. The record indicates that Associates had asked Sumrall to assist them in this matter, and he appears to have assumed the primary responsibility for dealing with Lynn. At the time Lynn relinquished the truck, Sumrall allegedly told him that "[he] wouldn't hear from Associates or anyone else about the truck, that that would be the end of it. . . ." Following notice and publication (two times in a local newspaper) Associates purchased the truck for $9,000 at a public sale

held August 9, 1982. The record indicates that the $9,000 purchase price was the "quick sale value," which is the value of the truck on an "as is, where is" basis. Appellants contend that both Associates and Sumrall knew of purchasers prior to the sale who were willing to buy the truck for substantially more than $9,000. Associates then sold the truck to Quality Trucks for $7,000. Quality subsequently sold the truck to Sells, Inc. for $15,802 and Sells then sold the truck to Courtesy Leasing, Inc. for $22,000.

On May 24, 1984 Associates filed a deficiency claim against Parks, Smith and Lynn, appellants herein. Appellants filed their answer and counterclaim on July 6, 1984, denying Associates' right to a deficiency because the sale was not conducted in a commercially reasonable manner and, by way of counterclaim, alleging that Associates committed various fraudulent acts in connection with both the March 14, 1982 repossession and the subsequent voluntary surrender and public sale in July and August of 1982. Associates filed a motion for partial summary judgment and a motion to dismiss and a hearing was held on November 12, 1985. Thereafter, appellants filed several affidavits and an amended counterclaim. The trial court entered an order on February 24, 1986, and an amended order on February 27, 1986, granting appellants' motion to supplement the record and dismissing appellants' counterclaim in its entirety, except for appellants' claim of loss of equity in the truck over and above the amount of debt owed. Appellants subsequently filed this appeal.

1. Appellants enumerate as error the trial court's dismissal of Count IV of their amended counterclaim and their original counterclaim alleging fraud and conspiracy to commit fraud. We find the trial court's dismissal proper as to both these contentions.

Appellants first contend that Sumrall's statement that Lynn "would not hear from Associates anymore . . . that that would be the end of it" constituted fraud or "inceptive fraud." See *Sams v. Duncan & Copeland*, 153 Ga. App. 765 (2) (266 SE2d 546) (1980). To recover in tort for fraud the party asserting same must prove five elements. *Eckerd's Columbia, Inc. v. Moore*, 155 Ga. App. 4 (1) (270 SE2d 249) (1980). One of these five essential elements is that the party alleging fraud must show reliance upon the representation. Since Sumrall's statements concerning the future actions of Associates were made *after* Lynn voluntarily relinquished the truck, we find that as a matter of law appellants have failed to show any reliance on these statements in connection with the July 1982 voluntary relinquishment of the collateral.

Appellants also contend that there was a conspiracy to defraud them "by intentionally selling the repossessed truck for less than its fair market value, so that they could make a profit on the resale and create a deficiency against the Defendants." The basis for this conten-

tion is that there were buyers for the truck who were willing to pay more than the bid-in price, that Sumrall knew of such buyers and told Associates that he had such a buyer, and other evidence that the bid-in price was too low, especially those facts concerning the subsequent sale of the truck for amounts substantially higher than the price bid-in at the August 9 public sale. These facts, however, do not show the necessary elements to set forth a claim for fraud. The record does not disclose that Associates or Sumrall made false representations to appellants concerning the matters set out hereinabove or that appellants had knowledge of or in any way relied on these events. See *Bacote v. Wyckoff*, 251 Ga. 862 (1) (310 SE2d 520) (1984). Thus, as a matter of law, appellants have failed to make out a case of fraud and we find the trial court's dismissal as to this count proper.

We agree with appellants that these facts raise a serious question concerning whether the sale of the collateral was conducted in a commercially reasonable manner as required by OCGA § 11-9-504 (3). In their answer, appellants properly raised this as a defense to Associates' claim for a deficiency. It is well established that if the sale was not commercially reasonable in all respects, then Associates is barred from obtaining a deficiency judgment. *Farmers Bank v. Hubbard*, 247 Ga. 431, 436 (276 SE2d 622) (1981); *Granite Equip. Leasing Corp. v. Marine Dev. Corp.*, 139 Ga. App. 778 (1) (230 SE2d 43) (1976). Moreover, under OCGA § 11-9-507 appellants may have a right to recover from Associates any loss caused by its failure to comply with the provisions of OCGA § 11-9-501 et seq. The right to this recovery, however, was preserved in the trial court's order, which allowed appellants their claim for loss of equity.

2. Appellants also contend that the trial court erred in dismissing their counterclaim for wrongful repossession. Appellants' claim for wrongful repossession is based in part on the Peach State representatives' alleged "impersonation" of police officers in violation of OCGA § 16-10-23 and wrongful display of a flashing or revolving blue light in violation of OCGA § 40-8-90. Since these acts constitute unlawful acts, appellants contend that the repossession was not accomplished "without breach of the peace" as required by OCGA § 11-9-503. Appellants also contend that the repossession was wrongful because Associates accepted late payments; thus, there had been a mutual departure from the terms of the contract under OCGA § 13-4-4 and Associates was required to give notice of its intention to rely on the terms of the original agreement prior to repossession of the collateral.

We find, however, that appellants relinquished any claims they may have had arising out of the March 14, 1982 repossession. The record shows that appellant Lynn redeemed the collateral following this repossession and, as part of the redemption price, reimbursed Associates for the expenses it incurred in hiring Peach State to effect

recovery of the truck. Lynn, subsequent to the redemption, again became delinquent in his payments to Associates and voluntarily relinquished the truck. We find that these actions amounted to an abandonment of appellants' right to maintain a tort action against Associates based on the March 14, 1982 repossession, and the trial court's dismissal of this count was proper. See *Moate v. Griswold*, 27 Ga. App. 31 (107 SE 387) (1921). See also *Hill Aircraft &c. Corp. v. Planes, Inc.*, 169 Ga. App. 161 (3) (312 SE2d 119) (1983).

3. Appellants also contend that the trial court erred in dismissing their counterclaim in its entirety. We have addressed all of appellants' claims in Divisions 1 and 2, and for the reasons set forth therein we find that the trial court's February 27, 1986 order dismissing appellants' counterclaim was proper.

*Judgment affirmed. McMurray, P. J., concurs. Carley, J., concurs in judgment only.*

DECIDED NOVEMBER 20, 1986 —
REHEARING DENIED DECEMBER 10, 1986 —

*Charles A. Gower, Jerry A. Buchanan*, for appellants.
*William D. DeGolian, Frank L. Wilson III, John T. Laney III*, for appellee.