### A89A1169. JAMISON v. FIRST GEORGIA BANK.
(387 SE2d 375)

SOGNIER, Judge.

David K. Jamison brought suit against First Georgia Bank alleging breach of contract, libel, negligent hiring and retention of a bank employee, and fraud. The jury returned a verdict in favor of Jamison

only as to the libel count, to which the trial court granted First Georgia's motion for judgment notwithstanding the verdict. The trial court denied Jamison's motion for new trial on the remaining issues and Jamison appeals.

1. Appellant contends the trial court erred by denying his motion for a new trial as to his breach of contract claim, based on his argument that the trial court misapplied OCGA § 11-4-406 (the charge to the jury of which is contended as error in appellant's third enumeration). The case involves a deposit made by appellant into his account on October 16, 1985. Appellant contended the deposit consisted primarily of cash, but that his account was credited with only the amount of a check deposited by appellant at the same time. Appellant thereafter wrote checks on his account which caused an overdraft because the cash funds, which appellant's personal account balance showed as present in the account, were not included in appellant's account at appellee. The evidence at trial established that the discrepancy in the amount was reflected in appellant's November statement, particularly in an altered deposit slip included in the statement, but that appellant did not bring the matter to appellee's attention until February 1986.

We need not address the applicability to this case of OCGA § 11-4-406, discussing a customer's duty to discover and report to his bank any unauthorized signatures or alterations on items contained in a statement of account, since we agree with appellee that appellant's breach of contract claim is controlled by the contract between the parties. The contract provides: "In consideration of the opening of this account by [appellee], the depositor [appellant] agrees that all transactions handled by [appellee] for this account shall be governed by the provisions of the Uniform Commercial Code of Georgia, except as such provisions are herein varied. . . . [Appellee] is authorized to mail all statements and cancelled items to the depositor. . . . The depositor will immediately examine such statement and accompanying evidence of charges and promptly report to [appellee] any difference of account of any unauthorized or altered items among those received. *In the absence of notice to [appellee] of any difference in the balance of the account within 60 days after any aforesaid mailing by [appellee], the account between the depositor and [appellee] as shown by such statement shall be considered to be correct and shall become an account stated.*" Thus, regardless whether the deposit slip in this case could qualify as an altered item within the contemplation of OCGA § 11-4-406, appellant's failure to notify appellee within 60 days of his receipt of the November statement reflecting the discrepancy in his balance resulted in the forfeiture of appellant's right to challenge the statement. Error, if any, in charging the jury as to the provisions of the statute was accordingly harmless, and the trial court

did not err by denying appellant's motion for a new trial. See generally *Orkin Exterminating Co. v. Flowers*, 187 Ga. App. 270, 271-272 (1) (370 SE2d 29) (1988).

2. Appellant contends the trial court erred by denying his motion for a new trial as to his fraud claim. "To recover in tort for fraud the plaintiff must prove five essential elements: (1) That the defendant made the representations; (2) that at the time he knew they were false; (3) that he made them with the intention and purpose of deceiving the plaintiff; (4) that the plaintiff relied on the representations; (5) that the plaintiff sustained the alleged loss and damage as the proximate result of their having been made." (Punctuation and citations omitted.) *Koppar Corp. v. Robertson*, 186 Ga. App. 856, 859 (4) (368 SE2d 807) (1988).

Appellant asserts he proved all five elements of fraud in regard to three representations made by appellee's employees, Doug McCoy and Carol Bruce, that if appellant deposited monies to cover the overdraft in his account, appellee would credit appellant's account after the internal investigation over the disputed funds ended. Appellant claims that relying on each of these deceptive representations he deposited funds to cover the overdraft and suffered the loss of the funds when appellee subsequently determined it was not in error, thereby applying the deposited funds to the overdraft and not crediting appellant's account with those funds.

As to Bruce's representation, appellant testified she told him that she would take care of the matter and check on his complaint the following morning to see if appellee's records were out of balance as a result of appellant's allegedly uncredited deposit. The following day she informed him appellee's records were not out of balance and appellant testified that they "couldn't resolve [the problem] obviously." The record establishes that Bruce's withdrawal of the alleged misrepresentation occurred prior to the time appellant deposited the funds to cover the overdraft. "[I]n order to sustain [a] cause of action for fraud the record must show that [the plaintiff] acted upon the misrepresentation of [the defendant]. [Cit.]" *Davis v. Northside Realty Assoc.*, 165 Ga. App. 96, 97 (2) (299 SE2d 186) (1983). "[R]epresentations which are not used as a basis for action will furnish no ground for complaint. [Cit.]" *North Peachtree &c. v. Hicks*, 136 Ga. App. 426, 430 (221 SE2d 607) (1975). See also *Parks v. Assoc. Commercial Corp.*, 181 Ga. App. 235, 236 (1) (351 SE2d 661) (1986).

Appellant testified that McCoy asked appellant to deposit funds to cover the overdraft, stating to appellant that "[h]e was sure that . . . [appellee] was going to take care of this." While "[a]ctionable fraud can arise in the case of 'promises as to future events made with the present intention not to perform, (cits.) or where "the defendant knows the future event will not take place" [cit.]' [cit.]," *Cooper v.*

*Re/Max North Atlanta*, 186 Ga. App. 79, 81-82 (1) (a) (366 SE2d 328) (1988), our careful review of the trial transcript fails to reveal any evidence that appellee did not intend to follow through on its employee's statement. "[A] party asserting fraud must introduce some evidence from which an inference of fraud may be drawn in order to make an issue." *Leachman v. Cobb Dev. Co.*, 229 Ga. 207, 209 (190 SE2d 537) (1972).

We agree with appellee that review of appellant's testimony regarding the final alleged representation failed to establish the existence of any fraud. The transcript reveals that appellant was asked whether McCoy told appellant he had investigated "these types of situations before," to which appellant responded that McCoy had stated that when complaining customers were shown the microfilm records of appellee, "they went away," and that appellant did not think McCoy did any investigation of the matter. Nothing adduced at trial indicates McCoy had not investigated similar matters or that customers had not behaved as McCoy stated. Therefore, "we find no error of law or abuse of discretion that would justify reversing the judgment below." *Commercial Artservices v. Buchtal Corp.*, 180 Ga. App. 305, 306 (348 SE2d 768) (1986).

3. Appellant contends the trial court erred by granting appellee's motion for judgment n.o.v. as to the libel claim. Appellant alleged that he was libelled when appellee dishonored appellant's checks drawn on his personal account. The libel in issue here was thus the notation on appellant's checks as returned to appellant's creditors by appellee that the checks were dishonored for insufficient funds, and the trial court granted appellee's motion for judgment n.o.v. made solely on the basis that appellant failed to present any evidence of special damages. We agree and affirm.

The libel found to exist by the jury in the case sub judice was not libel per se because it did not impute to appellant a criminal, dishonest, or debasing act, see *Reece v. Grissom*, 154 Ga. App. 194, 195 (1) (276 SE2d 839) (1980), nor was it defamatory in relation to appellant's trade or business. Compare *Southland Corp. v. Garren*, 138 Ga. App. 246, 250 (2) (c) (225 SE2d 920) (1976). We find no merit in appellant's argument that the libel did impute criminal guilt under OCGA § 16-9-20 (issuance of bad checks), since there is no evidence that the libel showed that appellant wrote any of the checks "knowing that [they would] not be honored by the drawee." OCGA § 16-9-20 (a).

" 'The special damages necessary to support an action for defamation, where the words are not actionable in themselves must be the loss of money, or of some other material temporal advantage capable of being assessed in monetary value. [Cit.] The loss of . . . income, of profits, and even of gratuitous entertainment and hospitality will be

special damage *if the plaintiff can show that it was caused by the defendant's words. . . .'* [Cit.]" (Emphasis supplied.) *Mell v. Edge,* 68 Ga. App. 314-315 (3) (22 SE2d 738) (1942). See also OCGA § 51-12-2 (b). In support of his argument that such evidence was presented, appellant points to his testimony at trial that after he insisted appellee pay him the cash sum he had deposited but which was not credited to his account, he was informed that appellee deemed itself insecure and accelerated his four loans with appellee. As a result, appellant testified he incurred damages when he had to refinance certain loans, lost the interest as early withdrawal penalties when he had to withdraw funds out of other accounts, and also incurred certain losses when he was forced to sell the collateral securing a number of those loans.

"[I]n libel actions, special damages which are not shown to be the result of the defamation are not recoverable. [Cit.]" *Van Gundy v. Wilson,* 84 Ga. App. 429, 440 (66 SE2d 93) (1951). We cannot agree with appellant that the evidence of damages set forth above (the costs he incurred in response to appellee accelerating his loans), constituted expenses actually flowing from appellee's tortious act toward appellant. See *Meyer v. Ledford,* 170 Ga. App. 245, 246 (316 SE2d 804) (1984). Appellant's own testimony established that the damages he proved were not caused by appellee's libel but were incurred when appellee accelerated his loans in response to appellant's demand for his money. Since his testimony was the sole evidence presented on the issue of damages, the transcript establishes that appellant failed to adduce any evidence from which the jury could have attributed to appellee's libel the damages appellant sustained.

Appellant argues, however, that he also presented evidence regarding his wounded feelings as a result of the dishonored checks and, citing *Fuqua Television v. Fleming,* 134 Ga. App. 731, 734 (215 SE2d 694) (1975), asserts that such damages are recoverable as special damages here. *Fuqua Television,* however, involved defamation by broadcast under OCGA § 51-5-10 and held wounded feelings to constitute "actual" damages under that statute. As noted in *American Broadcasting &c. v. Simpson,* 106 Ga. App. 230, 234-240 (126 SE2d 873) (1962), defamation by broadcast or "defamacast" is a new category of defamation different from common law libel and slander with its own limits on damages and not controlled by libel and slander case law. Id. at 240, fn. 8. This court in *Simpson* declined to discuss whether "actual" damages under OCGA § 51-5-10 equated to "special" damages required in slander and libel case law. *Simpson,* supra at 240-241, fn. 9. The case law cited in *Fuqua Television,* supra, in support of its holding does not reference libel or slander law, nor was any attempt made to explain or overrule *Signal Oil & Gas Co. v. Conway,* 126 Ga. App. 711, 716 and 717 (3) (191 SE2d 624), rev'd on other

grounds, 229 Ga. 849 (194 SE2d 909) (1972), in which, citing *Mell,* supra, we held that loss of peace of mind and similar "wounded feeling" damages were not the types of damages giving rise to libel per quod. Since proof of injury to the reputation and feelings *without* proof of special damages is sufficient to authorize a verdict for a plaintiff when libel per se is involved, see, e.g., *Atlanta Journal Co. v. Doyal,* 82 Ga. App. 321, 331 (4) (a) (60 SE2d 802) (1950); *Melton v. Bow,* 241 Ga. 629, 631 (247 SE2d 100) (1978), to construe "actual" damages under OCGA § 51-5-10 (as defined in *Fuqua Television,* supra) as applying to the special damages required to be shown where libel per se is not involved would in effect eliminate the difference between libel per se and libel per quod. We decline to do so here.

A judgment n.o.v. may be granted only when, without weighing the credibility of the evidence, there can be but one reasonable conclusion as to the proper judgment. *Coates v. Mulji Motor Inn,* 178 Ga. App. 208, 209 (2) (342 SE2d 488) (1986). Where a verdict for a party is demanded as a matter of law and the jury has returned an adverse verdict, the grant of a judgment n.o.v. is not error. *Harrell v. Thompson,* 182 Ga. App. 470, 472 (5) (356 SE2d 69) (1987). There being no evidence that appellant sustained special damages as a result of appellee's tortious act, the trial court did not err by granting appellee's motion for judgment n.o.v.

4. Appellant contends the trial court's failure to specify pursuant to OCGA § 9-11-50 (c) (1) the reasons why the trial court granted appellee's motion for judgment n.o.v. and denied his motion for a new trial entitles appellant to a new trial. The statute, however, does not require the trial court to state the reasons for its holding on a motion for judgment n.o.v. and, as to a motion for new trial, it applies only where the movant for judgment n.o.v. and the movant for new trial are one and the same party, and thus is not applicable by its terms to appellant's motion for new trial. Therefore, the trial court's "failure" in this matter would not be grounds for a new trial for appellant. But see *Melton v. Elbert Sales Co.,* 181 Ga. App. 61, 62 (351 SE2d 261) (1986).

*Judgment affirmed. Banke, P. J., and Pope, J., concur.*

DECIDED OCTOBER 6, 1989 —
REHEARING DENIED OCTOBER 18, 1989 —

*Greer, Klosik & Daugherty, Frank J. Klosik, Jr., H. Clifton Cobb,* for appellant.

*Troutman, Sanders, Lockerman & Ashmore, Herbert D. Shellhouse,* for appellee.