965 So.2d 300 (2007)
BANK OF AMERICA, N.A., Appellant,
v.
PUTNAL SEED AND GRAIN, INC., Appellee.
No. 1D06-3703.
District Court of Appeal of Florida, First District.
September 18, 2007.
Jessie L. Harrell and C. Ryan Maloney of Foley & Lardner LLP, Jacksonville; John R. Hamilton and Christi R. Adams of Foley & Lardner LLP, Orlando, for Appellant.
George T. Reeves of Davis, Schnitker, Reeves & Browning, P.A., Madison, for Appellee.
PER CURIAM.
Appellant ("the bank") appeals the trial court's order granting final summary judgment in favor of Appellee ("Putnal"). We agree with Appellant that the trial court erred; therefore, we reverse and remand.
Over a period of approximately four months in 2003, Putnal's bookkeeper fraudulently obtained cash from deposits she made into Putnal's bank account. When Putnal learned of her fraud, it requested copies of its bank statements and discovered she had received a total of $51,091.63 cash in 13 separate transactions. The bank refused to reimburse Putnal for its loss, claiming that Putnal failed to notify it of any "problems or unauthorized transactions" within 60 days, as required in the Deposit Agreement entered into between the parties.
Putnal filed a negligence suit against the bank, seeking reimbursement for its loss. Putnal moved for summary judgment, arguing that no issues of material fact existed and it was entitled to judgment as a matter of law. Putnal offered two grounds in support of its motion. First, Putnal alleged that under chapter 674, Florida's version of Article 4 of the Uniform Commercial Code (UCC), a deposit slip does not qualify as an "item" or "instrument;" accordingly, any statutory provisions referencing these terms do not apply, including the bank's ability to raise a contributory negligence defense. Because the bank could not argue that Putnal had been contributorily negligent in hiring its bookkeeper or in failing to review its monthly statements, Putnal alleged it was entitled to summary judgment.
*301 Second, Putnal argued that the bank's release of funds to the bookkeeper without the signature of any person listed on the signature card constituted a failure to exercise ordinary care as a matter of law, which also entitled Putnal to summary judgment. In response to this allegation, the bank argued that the parties may, by agreement, alter the default statutory provisions contained in chapter 674. § 674.103(1), Fla. Stat. (2002). Section 674.406(6), Florida Statutes (2002), states that a customer is precluded from asserting a claim against a bank if he fails to report an unauthorized signature or alteration within one year of the statement being sent to the customer, "without regard to care or lack of care of either the customer or the bank." The bank argued that the Deposit Agreement was merely a permissible alteration of this portion of chapter 674; specifically, it applied the notice provision to "unauthorized transactions" rather than "items" or "instruments," and reduced the amount of time Putnal had to give notice from 1 year, as provided in the statute, to 60 days, as provided in the Deposit Agreement.
The trial court granted summary judgment for Putnal, accepting its arguments and finding that deposit slips do not qualify as "instruments" or "items" under chapter 674; therefore, the bank could not raise a contributory negligence defense. As to Putnal's second argument, the court reasoned that while it was true that parties may vary default provisions of the UCC, they may not "disclaim a bank's responsibility for its . . . failure to exercise ordinary care or limit the measure of damages for the lack of failure." § 674.103(1), Fla. Stat. (2002). Accordingly, the trial court found that the bank's release of funds to the bookkeeper constituted a failure to exercise ordinary care as a matter of law, which rendered the Deposit Agreement void.
We were not asked by the parties to address the validity of the court's finding that the Deposit Agreement does not qualify as an "item," so we decline to do so here. We do find, however, that the trial court erred in holding the Deposit Agreement void. The agreement between the parties does not disclaim the bank's responsibility to exercise ordinary care and it does not limit the bank's damage for its failure to exercise such care. Accordingly, the Deposit Agreement is not in violation of section 674.103(1), and it is a valid agreement.
Use of the term "problems or unauthorized transactions" in the Deposit Agreement, rather than "items" or "instruments," as used in chapter 674, does not absolve the bank of its duty to exercise ordinary care; it simply provides a broader definition of the types of transactions Putnal must report in order to seek reimbursement for unauthorized use of its account.
In addition, reducing the time period in which Putnal was required to notify the bank of problems or unauthorized transactions from 1 year to 60 days also does not absolve the bank of its duty to exercise ordinary care. The 60-day notice requirement only creates a condition precedent which Putnal must comply with before it may seek reimbursement. See Jamison v. First Ga. Bank, 193 Ga.App. 219, 387 S.E.2d 375, 377 (1989) (stating in dicta, "regardless whether the deposit slip . . . could qualify as an altered item within the [UCC], appellant's failure to notify appellee within 60 days of his receipt of the November statement reflecting the discrepancy in his balance resulted in the forfeiture of appellant's right to challenge the statement."); Stowell v. Cloquet Co-op Credit Union, 557 N.W.2d 567 (Minn.1997) (enforcing a 20-day contractual provision); *302 Canfield v. Bank One, Tex., N.A., 51 S.W.3d 828, 836 (Tex.App.2001) (enforcing a 90-day contractual provision and stating that "[c]onditions precedent are consistent with the goals of the UCC and general public policy."); New York Credit Men's Adjustment Bureau, Inc. v. Mfrs. Hanover Trust Co., 41 A.D.2d 912, 343 N.Y.S.2d 538, 540 (1973) (holding that agreement requiring notification of suspected forgery within 30 days after statement was sent to customer did not serve to absolve bank of its negligence, but only provided a condition precedent to liability); Parent Teacher Ass'n, Public Sch. 72 v. Mfrs. Hanover Trust Co., 138 Misc.2d 289, 524 N.Y.S.2d 336, 340 (N.Y.Civ.Ct.1988) ("Conditions precedent and shortened periods of limitation . . . have been routinely accepted in the banking relationship, usually without extensive analysis. Such provisions are not only compatible with statute and case law; they are in accord with public policy by limiting disputes in a society where millions of bank transactions occur every day." (internal citations omitted)).
Although none of the cited cases were disposed of on similar grounds, we find their logic persuasive. If a notice provision is acceptable for a transaction involving a fraudulent check, it is acceptable for a fraudulent transaction involving a deposit slip, especially where, as here, the parties agreed to the use of the term "unauthorized transactions" in the Deposit Agreement rather than "items" or "instruments."
Because the Deposit Agreement has no effect on the bank's duty to act with ordinary care, it is not void based on section 674.103(1); therefore, the trial court erred in granting Putnal's motion for final summary judgment, and we reverse. On remand, the trial court should consider Putnal's claims based on the controlling Deposit Agreement. Putnal's award for attorneys' fees below is also reversed. We decline to address the remaining issues raised on appeal.
REVERSED and REMANDED for further proceedings consistent with this opinion.
PADOVANO, THOMAS and ROBERTS, JJ., concur.